IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SHARON PHILLIPS, o.b.o.
CARMEN PHILLIPS (deceased),

        Plaintiff,

vs.                            Case No. 13-1005-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,[1]

        Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013, replacing Michael J. Astrue, the former Commissioner of Social Security.

scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or

mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled. If

the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

**II. History of case**

On June 17, 2011, administrative law judge (ALJ) James Harty issued his decision (R. at 9-20). Plaintiff alleges that she had been disabled since November 1, 2001 (R. at 9). Plaintiff is insured for disability insurance benefits through

4

December 31, 2013 (R. at 11). At step one, the ALJ found that plaintiff engaged in substantial gainful activity from September 2004 through October 2005; plaintiff did not work at a level of substantial gainful activity after 2005 (R. at 11). At step two, the ALJ found that plaintiff has the following severe impairments: obesity, degenerative disc disease of the lumbar spine, degenerative joint disease of the knees-status post surgery of the left knee, carpal tunnel of the right non-dominant extremity, atrophic right kidney, ventricular tachycardia, dilated cardiomyopathy, congestive heart failure, hypertension, hyperlipidemia, migraines, anxiety and major depressive disorder (R. at 12). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 12). After determining plaintiff's RFC (R. at 15), the ALJ determined at step four that plaintiff could not perform any past relevant work (R. at 19). At step five, the ALJ determined that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 19-20). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 20).

**III. Are the ALJ's RFC findings supported by substantial evidence as required by SSR 96-8p?**

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each

5

conclusion, citing specific medical facts...and nonmedical evidence." The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184 at *7. SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence. See Southard v. Barnhart, 72 Fed. Appx. 781, 784-785 (10th Cir. July 28, 2003). The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence. Spicer v. Barnhart, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003). It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions. Cruse v. U.S. Dept. of Health & Human Services, 49 F.3d 614, 618 (10th

Cir. 1995). When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination. Such bare conclusions are beyond meaningful judicial review. Brown v. Commissioner of the Social Security Administration, 245 F. Supp.2d 1175, 1187 (D. Kan. 2003).

The ALJ made the following RFC findings:

> …claimant had, prior to her death, the residual functional capacity to perform sedentary work…except claimant was limited to occasional pushing and pulling with the lower left extremity, stooping, kneeling, crouching, crawling and climbing ramps and stairs; she needed to avoid climbing ladders, ropes, and scaffolds; and was limited to occasional gross handling with the upper right, non-dominant extremity. Claimant needed to avoid concentrated exposure to hot/cold temperature extremes and vibration; and was limited to occupations which do not require exposure to dangerous machinery and unprotected heights. Claimant was limited to simple, routine repetitive tasks.

(R. at 15).

On March 5, 2010, Dr. Warren prepared the 1st physical RFC assessment of the plaintiff based on his review of the records (R. at 549-557). His findings include various narrative discussions (R. at 550, 551, 553, 554). Dr. Warren requested a physical examination to cover the period on or after October 16, 2009 (R. at 557). On April 2, 2010, Dr. Smith prepared a

consultative examination on the plaintiff, including an interview and physical examination of the plaintiff (R. at 564-565). On April 16, 2010, Dr. Warren prepared a 2nd physical RFC assessment of the plaintiff (R. at 642-649), including various narrative discussions (R. at 643-644, 645, 646, 647).

On July 22, 2010, Dr. Coleman stated that Dr. Warren's physical RFC was accurate until plaintiff was hospitalized on June 4, 2010 (R. at 775). As noted by Dr. Coleman, plaintiff was hospitalized from June 4-7, 2010 for pneumonia and congestive heart failure, with a probable myocardial infarction (R. at 696). Plaintiff died on June 20, 2010 after a suspected sudden cardiac arrest (R. at 747).

The ALJ gave substantial weight to the 2nd physical RFC assessment performed by Dr. Coleman. However, the ALJ found that plaintiff was more exertionally limited than allowed by Dr. Warren (R. at 18).

On April 13, 2010, Dr. Schulman prepared a psychological review technique form, finding that plaintiff's impairments were not severe (R. at 621-633). His report includes a narrative discussion (R. at 633). On April 4, 2010, Dr. Klemens performed a psychological examination of the plaintiff (R. at 558-561). He concluded that her mental illness symptoms alone are not considered to significantly impact her ability to work (R. at 561). On July 26, 2010, Dr. Stern reviewed the file and

affirmed the assessment by Dr. Schulman (R. at 776). The ALJ gave some weight to the opinions of Dr. Schulman, but found that plaintiff was more moderately limited in the area of concentration and pace, and limited plaintiff to simple, unskilled work (R. at 18).

Plaintiff argues that there was insufficient evidence before the ALJ to determine plaintiff's RFC. In regards to plaintiff's physical limitations, the ALJ had before him two RFC assessments by Dr. Warren and a consultative examination by Dr. Smith. The 2nd assessment by Dr. Warren and Dr. Smith's exam predated plaintiff's death by only two months. Dr. Coleman affirmed the 2nd assessment by Dr. Warren, indicating that the RFC was accurate until June 4, 2010, 16 days before plaintiff's death. The ALJ gave substantial weight to the 2nd assessment by Dr. Warren, an assessment affirmed by Dr. Coleman, but the ALJ found that plaintiff was even more limited than allowed by Dr. Warren. This assessment contained narrative discussions of the basis for his findings (R. at 643-644, 645, 646, 647). Furthermore, as noted above, Dr. Warren had requested a physical examination of the plaintiff when he prepared the 1st assessment (R. at 557). Dr. Smith subsequently performed a consultative examination, which Dr. Warren referenced in his 2nd assessment (R. at 644).

Unlike Fleetwood v. Barnhart, 211 Fed. Appx. 736, 740 (10th Cir. Jan. 4, 2007), this is not a case in which the ALJ only relied on a check-the-box form with little or no explanation for the conclusions reached. In the case before the court, Dr. Warren included a narrative discussion with his findings, and even requested that a consultative physical examination be performed on the plaintiff, and then prepared a 2nd assessment, again with narrative discussions included with his findings.

Furthermore, none of the medical evidence contradicts the ALJ's RFC findings. When the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened. Wall v. Astrue, 561 F.3d 1048, 1068-1069 (10th Cir. 2009); Howard v. Barnhart, 379 F.3d 945, 947 (10th Cir. 2004).

In addition, plaintiff asserted on May 7, 2008 on an employer form that, although she had bulging discs and right knee arthritis, she had no physical complaints or disabilities, and did not have any medical or physical condition that would require avoiding certain types of work (R. at 219). The ALJ could reasonably rely on plaintiff's own statements to support a finding that plaintiff did not have any additional limitations beyond those set out in the ALJ's RFC findings.

The court also finds that the fact that the ALJ found that plaintiff was even more exertionally limited than allowed by Dr.

Warren does not constitute reversible error.  When a medical opinion adverse to the plaintiff has been given substantial weight, the ALJ does not commit reversible error by electing to temper its extremes for the claimant's benefit.  Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012); see Mounts v. Astrue, 2012 WL 1609056 at *8 n.2 (10th Cir. May 9, 2012)(Claimant complained that there was no evidence to support limitation imposed by ALJ; court held that because this additional limitation worked to claimant's benefit, the court declined to address the argument).  As the court stated in Chapo, "we are aware of no controlling authority holding that the full adverse force of a medical opinion cannot be moderated [in the claimant's favor] unless the ALJ provides an explanation for extending the claimant such a benefit."  682 F.3d at 1288. Furthermore, when the full adverse force of a medical opinion is moderated in a claimant's favor, there is no controlling authority that the ALJ must explain why the plaintiff was not more limited than found by the ALJ unless there is medical opinion evidence supporting a greater limitation.  In the case before the court, there is no medical opinion evidence supporting limitations greater than those set out in the ALJ's RFC findings.

Plaintiff also referenced a letter from Dr. Durham dated January 18, 2011, which discussed plaintiff's impairments which

led to her death (R. at 18). However, the ALJ correctly noted that the letter provided no opinions regarding plaintiff's limitations at any time (R. at 18), and there was no legal, statutory or regulatory requirement that the ALJ recontact Dr. Durham in order to attempt to obtain an opinion from him regarding plaintiff's limitations. In summary, the court finds that substantial evidence existed in the record to support the ALJ's physical RFC findings.

In regards to plaintiff's mental limitations, the ALJ had before him a report from Dr. Schulman, including a narrative discussion, which was affirmed by Dr. Stern. The ALJ also had in the record a psychological assessment by Dr. Klemens, who found that plaintiff's symptoms are not considered to significantly impact her ability to work. The ALJ gave some weight to the opinions of Dr. Schulman, but again, tempered the opinions in plaintiff's favor by finding that she had limitations not contained in Dr. Schulman's report. The court finds that the ALJ had sufficient evidence in the record to support his mental RFC findings.

Plaintiff also argues that the ALJ should have made a finding as to whether plaintiff became disabled as of June 4, 2010, when plaintiff was hospitalized. As noted above, plaintiff died on June 20, 2010. However, one is not entitled to disability insurance benefits unless the claimant has been

disabled for 5 full consecutive months. 20 C.F.R. § 404.315(a)(4). Furthermore, entitlement to disability insurance benefits ends the month before a claimant's death. 20 C.F.R. § 404.316(b)(1). In addition, a claimant is not eligible for payment of supplemental security income (SSI) until the month after the claimant is first eligible for SSI benefits. 20 C.F.R. § 416.203(b). Therefore, plaintiff's argument that the ALJ should have made a finding as to whether plaintiff became disabled as of June 4, 2010 until her death on June 20, 2010 is without merit.

**IV. Did the ALJ err in his evaluation of the testimony of the decedent's mother?**

The ALJ discussed the testimony of the claimant's mother, and concluded that her testimony would be given no weight because it was not consistent with the record as a whole and therefore was not credible (R. at 16). Claimant's mother is maintaining this action following the death of her daughter. Although the court is not ruling that the testimony of claimant's mother must be weighed by the same standard as that of the decedent claimant, the court will review the ALJ's decision based on that standard.

Credibility determinations are peculiarly the province of the finder of fact, and a court will not upset such determinations when supported by substantial evidence. However,

13

findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings. Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). Furthermore, the ALJ cannot ignore evidence favorable to the plaintiff. Owen v. Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in Kepler. White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). Furthermore, the ALJ need not discuss every relevant factor in evaluating pain testimony. Bates v. Barnhart, 222 F. Supp.2d 1252, 1260 (D. Kan. 2002). An ALJ must therefore explain and support with substantial evidence which part(s) of claimant's testimony he did not believe and why. McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002). It is error for the ALJ to use standard boilerplate language which fails to set forth the specific evidence the ALJ considered in determining that a claimant's complaints were not credible. Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004). On the other hand, an ALJ's credibility determination which does not rest on mere boilerplate language, but which is

14

linked to specific findings of fact fairly derived from the record, will be affirmed by the court. White, 287 F.3d at 909-910.

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence. See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion). The court can only review the sufficiency of the evidence. Although the evidence may support a contrary finding, the court cannot displace the agency's choice between two fairly conflicting views, even though the court may have justifiably made a different choice had the matter been before it de novo. Oldham v. Astrue, 509 F.3d 1254, 1257-1258 (10th Cir. 2007).

The testimony of claimant's mother is certainly not supported by the medical opinion evidence relied on by the ALJ in making his RFC findings, and plaintiff fails to cite to any medical opinion evidence to support the testimony of claimant's mother. The ALJ also gave great weight to the opinions of three

15

former employers.  The first, a job with Future Care Inc. from 2004-2005, indicated that plaintiff had no problems or limitations in doing her job, but was fired for neglect of a patient (R. at 260-266).  The second, a job with Fantastic Caverns in 2007, also indicated that plaintiff had no problems or limitations in doing her job.  Plaintiff voluntarily quit that job with short notice (R. at 269-271).  The third, a job with DSI Security Services, in 2008, again indicated that plaintiff had no problems or limitation in doing her job, except that she was not able to learn new tasks within an acceptable time frame.  She was terminated for tardiness and sending out the wrong trailer with the wrong bill (R. at 216-218).  At this job, plaintiff (decedent) filled out a form dated May 7, 2008 indicating that she had 3 bulging discs and right knee arthritis.  However, she also stated that she had no physical complaints or disabilities at the present time, that she had no medical or physical conditions that she was aware of which would require avoiding certain types of work, and she did not have a heart ailment of any kind (R. at 219).  The ALJ reasonably relied on these statements from three former employers and from plaintiff herself as indicating that plaintiff was capable of full-time work, and to discount the opinions of claimant's mother.

The court finds that the ALJ set forth the specific evidence he relied on in evaluating the credibility of the testimony or statements of the claimant's mother, including the medical opinion evidence, the statements from three former employers, and plaintiff's own assertions in 2008 that she had no physical complaints, disabilities, or medical or physical conditions that would require avoiding certain types of work. The court will not reweigh the evidence. The court finds that substantial evidence supports the ALJ's findings regarding the credibility of the statements or testimony of the plaintiff's mother.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

Dated this 4th day of March 2014, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge